at all v. Fidelity Mgmt. Trust Co. at all. Good morning. Good morning, Counsel. Good morning, Your Honors. May it please the Court, my name is Mark Johnson, and I represent the plaintiffs and the appellants in this case. We have agreed to give five minutes of our oral argument time to Amicus, the Secretary of Labor, and I'd like to try and reserve three minutes for rebuttal, if I can. The facts on which plaintiffs' claims in this case are based are simple and straightforward. First, Fidelity served as trustee for government for, excuse me, ERISA-governed retirement plans, and in its capacity as trustee, it sold plan-owned mutual fund shares to obtain money necessary to make distributions to participants. It deposited that money in bank accounts on which checks were drawn to the participants, and while the checks were outstanding, it took that money, invested it, and used the earnings on the investment for its own purposes and for the purposes of third parties, namely the mutual funds. Mr. Johnson, I want to be clear on one thing. Has either the plan or a particular beneficiary received less than the plan documents call for that person or the plan to receive? In other words, has there been a breach of the contract among them? Your Honor, the claim is based upon a breach of fiduciary duty. But did anybody get less than that person was entitled to under the specific plan provisions? The plan got less than it was entitled to because the plan is entitled to the benefits of any earnings on plan assets. You're talking now about an argument based on fiduciary responsibility under the statute. I'm asking you a question, at least I think you are, I'm asking you a question about the terms of the plan itself. Did anyone get less than the terms of the plan specifically required that person to receive? Well, Your Honor, I'm not sure that the plans themselves dictate the amounts that are to be received. They dictate a process for distribution, and the plan participants, the particular plan participants that withdrew from the plans did not receive less. But the plans received less than they would under the contract and the agreements had the trustee abided by its fiduciary duties. Isn't your answer is that the plan didn't specify what was to happen to float? In fact, it was silent. And as the DOL then explains, that silence actually means that the default position, absent notice from the fiduciary is that the float should have gone to the plan, irrespective of whether the plan had a provision specifically addressing it. That's correct, Your Honor. That's the Department of Labor's position. Was that your position in the suit? That is our position, Your Honor. And our position actually goes one step further and says that when you take the proceeds of mutual fund shares that are owned by the plan and deposit them into an account and invest them in interest as earned, that the monies in that account, because they were generated from the sale of mutual fund shares owned by the plan, belong to the plan and, therefore, any earnings belong to the plan. But we relied on all of the same authorities that the DOL relies on, those guidances. Those were alleged in the complaint. They were briefed below, and they were briefed on appeal. And so the differences in the Secretary's position and our position are not great at all. Our position encompasses all of the arguments made by the Secretary. Your primary position clearly appears to have been that the plan asset argument, that the particular funds in the account at a particular time were plan assets. That's correct, Your Honor. The DOL advocates a position that really it doesn't require an analysis of whether they were specifically plan assets at the time, but rather requires an analysis of the discretion of the fiduciary and whether that discretion was operated in a way so as to generate flow for the fiduciary. That is my understanding of the Secretary's position, Your Honor. Did you advocate that position below? We do, Your Honor. I think it would be we did. Did you? Yes, Your Honor. I think that by citing the various DOL authorities, the guidances that are cited in the complaint and the brief, we did advocate that position. We believed and our argument focused on the fact that these are plan assets. I don't know how any other conclusion can be reached. When the sale of mutual fund shares owned by the plan generate cash, the cash is deposited into an account and it's invested in a ______. Suppose the plan was structured so that upon redemption, the mutual fund simply mailed a check to the beneficiary whom the plan accounting showed owned those funds. I don't think that can happen, Your Honor, because the nature of the transaction, when there's a sale of the mutual funds, the mutual fund shares, those shares are owned by the plan. So when they are sold, the plan obtains the cash. I think what Your Honor is asking ______. If it was structured so that redemption goes to the mutual fund along with the list of the name and address of the beneficiary and the mutual fund then mails the beneficiary a check, wouldn't that cash be a plan asset under that scenario? I think it would need to be a plan asset because if my understanding of Your Honor's question is correct, it's basically what Fidelity is advocating as its third-party beneficiary contract. If the documents themselves, which is not in fact the case, directed the mutual fund to pay the participants directly, then it wouldn't be a plan asset. But there's no evidence on the record of that. There's no direction to the mutual funds. And it really can't happen because if the mutual funds were paying the participants directly, the entire ERISA retirement structure would lose its tax advantages. This money has to come not from the mutual fund but from the plan because, for example, in the case of a rollover of a distribution to another plan, that only is a non-taxable event. If it comes from a qualified trust to another qualified trust under the tax code. And so what Your Honor is suggesting, and which is I think the basis of the third-party beneficiary contract that Fidelity is arguing, would undermine those tax advantages. So this is structured and it has to be structured in such a way that legally speaking, the money comes from the sale of the mutual fund shares that are owned by the plan to the plan. And regardless of what kind of account it goes into, because they're assets of the plan, any earnings on those funds are assets of the plan and can't be used for the benefit of Fidelity or for any third party.  Because the participants don't own the mutual fund shares. The plan does. And I have other comments, obviously, but I'll save my time for rebuttal. Thank you. Good morning. May it please the Court, Elizabeth Hopkins on behalf of the Secretary of Labor, as amicus curiae in support of the participants and plaintiffs here. I want to start not where I was going to with my argument, but with this question of whether the participants here got everything that they were entitled to. It may well be that the participants who were paid out at the time, who requested distributions or rollovers from the plan, got what they wanted. But this is what they were entitled to under the plan in some sense. But the logical implication of this argument, this is a 401K plan, and if the plan was entitled to the float income, and we believe on the allegations here the plan was, how any individual account is calculated has to do with the contributions that are made and the earnings on those contributions. So ultimately in the future there will be more for each of the participants, and each of the participants in some sense will be entitled to more earnings because of this float income. So the beneficiary's benefit would have to be rephrased as meaning not merely the equivalent of the proceeds of the share of float income. Well, I would think in the future that's correct. That would accomplish what you were advocating. That's exactly right. I don't think this was not a claim for individual benefits. This was a claim for breach of fiduciary duty on behalf of the plan, and the allegation is that the float should go to the plan, and we think that that's correct. Are you saying as an actuarial basis in calculating the precise amount of benefits due, there's effectively as time goes by a slight reduction in what someone might otherwise have gotten just by looking at the newspaper values of the stock to account for plan expenses, and those expenses would be offset if there were float? Well, over time I think the float would add to the actuarial amount or the amount that each of the participants would earn. So a beneficiary's not going to get a separate allocation for the float. It's simply going to be the net distribution will be slightly marginally affected by a change in the plan's overall expenses and income. I think that's right, but, you know, over time these small amounts of float, this small amount of expenses can really add up. They can really eat into a participant's ultimate payout. So it's not, you know, it's not just about the plan. It never is ultimately about the plan. It's at the end of the day about the participants and beneficiaries. And in a 401K plan how, you know, how interest is allocated, how expenses are allocated makes a big difference. So that's the first thing I sort of wanted to jump in and address. I think the second thing I want to talk about is that makes sense to address here is sort of the point of difference between what the We agree that all the same provisions that the participants point to, ERISA's general loyalty provision, two of ERISA's prohibited transaction provisions were violated here if, as alleged, Fidelity, which was trustee to all these 401K pension plans, used the cash generated when it sold the mutual fund investments owned by the plan, the shares owned by the plan following these distribution or rollover requests, to generate float income that it didn't distribute to the plan. We don't take the position that there were no plan assets involved. There have to be plan assets involved to show violations of the two prohibited transaction provisions at issue. The plan assets were the shares and the mutual funds that were owned by these 401K pension plans. And when Fidelity used the distribution of those, the sale of those shares in order to generate this float income, it was using, it was not operating the plan solely in the interest of plan participants and beneficiaries and for the exclusive purpose of paying them benefits as is required by Section 404 loyalty. And it was using, it was acting as a plan fiduciary directly or indirectly using plan assets to benefit itself or related third parties. And it was using plan, dealing with plan assets in its own interest and for its own account. The only place where we differ from the participants is whether those plan assets remain plan assets throughout the distribution process, including when they're put into interest bearing accounts. That presented, you know, a long time ago when we were giving guidance on this, raised a lot of issues under banking law. We looked at the issue and said it doesn't really matter. Certainly there were plan assets, you know, that were at issue here, that were the shares being sold. And so if they retain their, whether or not they retain their character as plan assets throughout the distribution process really doesn't matter. It's the fact that Fidelity uses its fiduciary responsibilities as trustee in making these distributions to earn interest for itself and not for the plans or for third parties and not for the plans that violates the statute. And I see that my time is up. So unless the court has further questions, I'll sit down. Thank you. We're going to have to figure out if they made that argument. That's the problem, the latter argument. Good morning, Your Honors. May it please the court. My name is John Hacker, attorney for the Fidelity entities. Plaintiff's theory that float is a plan asset is simple, but it's flawed. They assume that because the plan owns the mutual fund shares, the plan takes title, ownership title, to the mutual fund's cash at the instant a share is redeemed and thus is entitled to interest during the period that the withdrawal check is being processed. Well, they don't just assume that. They allege that when the funds went from the mutual fund to Fidelity that Fidelity received them as trustee for the plan. Fidelity acted as trustee, but the assumption is unsupported that the plan assumes a title, ownership title, interest in the cash at the moment of redemption. There are multiple reasons why that's not true. It's just an assumption. They don't cite anything for it, and it's not correct for a number of reasons. The first one is that no mutual fund share owner, in any circumstances, ever receives interest on the redemption funds as his or her check is being processed. Ownership in a mutual fund constitutes only the right to payment in due course by a check, as here, for the value of the shares at 4 o'clock on the day of redemption. It never includes a check for the value at 4 o'clock plus a couple days' worth of interest. So what about the interest that accrues after the mutual fund turns over the money to Fidelity? So now Fidelity is holding it, and we must assume it's holding it as a fiduciary, because that's the allegation here. We haven't got to discovery or anything. Then how does Fidelity, when it holds those proceeds of the sale of plan assets, keep for itself without any disclosure? Because you're assuming at that point in time that these are the proceeds of a sale of plan assets. What these are is the transfer of the mutual fund's own assets that don't stop being the mutual fund's own assets at 4 o'clock. But we don't care whether they were assets of the mutual fund. Of course they were. Suppose it was GM stock, and Fidelity just sold it in the market. Right. That would be a different case. Well, no, the person who paid for that GM stock, what they used to pay for it was clearly not plan assets. But when Fidelity receives the money in exchange for that stock, and if the stock itself, like the mutual fund shares, was a plan asset, then why aren't the proceeds that Fidelity receives as trustee a plan asset? And what I'm trying to convey is they're not receiving it in exchange as proceeds. What they're doing is processing the check just like a check would be processed in a retail transaction with no plan involved. It's the exact same process. Now you're disputing whether they were receiving it as plan trustee. Well, they're certainly acting, and this isn't disputed either, as the transfer agent. FIOC is, according to the prospectuses, the transfer agent for the mutual funds. This is the same process that would occur in a retail transaction. A check has to be cut just as occurred in Merriman & Son Life, Your Honor. The assets there. How do they cease to be a fiduciary short of distribution of the proceeds to the beneficiary? I mean, you're saying that there's a break in the fiduciary status. I'm not saying that, Your Honor. They are a fiduciary. They're acting as trustee, but that doesn't answer the question as to whether or not what they're handling becomes a plan asset because the plan assumes an ownership interest in it. What they're doing is facilitating the distribution of funds owned by the mutual fund to the participants who are withdrawing their funds from the plan. The plan never inserts itself. But the only reason they are in a position to do that is that they are also acting as a trustee. That's correct. So are we sort of parsing it a little too fine to say that somehow their trusteeship is easily separable from their position as a transfer agent when, in fact, they couldn't be a transfer agent in this transaction but for their trusteeship position? But remember the same was true in Merriman & Son Life. The insurer was acting as a fiduciary, not as a trustee, but still had fiduciary responsibilities, and this court said that the transfer of funds from the insurer to the beneficiaries upon the payment of the death benefit, at no point in that situation did the plan ever insert itself as an owner of those assets. The same is true here to the contrary. But here the plan started out clearly the mutual fund shares were plan assets. Correct. The proceeds of the insurance company in Merriman, the assets used to pay, were never plan assets. That's not quite correct. The life insurance policy was a plan asset. The life insurance policy reflected a right to payment upon a certain condition, a payment from the life insurer to the beneficiary. The same is true here. But that policy said what would be paid upon the condition being satisfied is the beneficiary would receive a retained asset account. And here it says the beneficiary will receive a check. There is a checking account, and here it's a check supported by the funds that are provided by the mutual fund. Suppose this fund simply said when you redeem, the plan will hand you the shares that were allocated to your account, in a rollover-like situation, for example. Yeah. And so Fidelity went and picked up the shares to bring them over to me, and on the way over a dividend check came in from the mutual fund to the share owner. Who gets that dividend check? Well, I don't know the answer to that question. It seems to me the beneficiary, not Fidelity. But the plan never would. The plan never assumes an ownership interest because it's very clear. The plan does not dispute this. Would Fidelity get to keep the dividend check in that scenario? It would either be a question of the superior ownership claim is between the beneficiary or the mutual fund, in terms of title to the underlying assets. That's the question here. But the one thing we know which isn't disputed is there's no point in this transaction. Never does the plan assume any risk of loss, which this Court has said is the central characteristic of ownership as a matter of ordinary property. The plan never assumes any risk of loss. More than that, the plan also explicitly prohibits in three different provisions of the trust agreement, the trust agreement rather, explicitly prohibits Fidelity from holding cash in the trust agreement. All of the questions and the plaintiff's position are presupposing that the cash being transferred is owned by the plan, necessarily being held in the trust. Are you saying there was no bank account for the plan at all? It didn't have incidental needs for cash to pay? That's correct. There's no bank account holding cash for the plan. The bank account were registered for the benefit of the mutual funds. That's conceded below. It was true in the Tussey case that the complaint is based on. How did the plan pay its expenses? Any expenses were taken out of – well, the plan didn't necessarily have expenses in this respect because any income went back to the mutual funds and account fees were taken out of the – This plan had no expenses at all for anything that it ever needed to write a check for? I don't know what expenses it had or how they would have been accounted for. Isn't that something we find out in the discovery? Well, to be clear, the documents provide the plan expenses can be paid for from plan assets. So if there were plan expenses, they could be paid for out of plan assets. So to the extent these are plan assets, it was permissible to pay any accounts that were owned by the plans out of these assets. But these are not plan assets. These belong to the mutual funds. Presumably the plan could have an account that would allow it to make those payments. If the trust agreement had said the plan is allowed to hold cash and need an account to have cash, it could do that. This trust agreement said directly the opposite. It prohibited – it affirmatively prohibited fidelity from holding any of the plan assets in cash. Actually, it didn't. It didn't, did it? It simply gave fidelity permission on direction, right? The language you're relying on wasn't a flat-out prohibition. If you look at 20.01, it required fidelity only to hold assets in, quote, permissible investments. 20.02 of the trust agreement said that the trust must be, quote, fully invested in fund shares. So permissible investments are only fund shares. There's nowhere that says that permissible investments include cash. And then you get to 20.04c, which says fidelity is authorized to retain, quote, retain uninvested cash only as directed by the plan sponsor. And there's no direction here for fidelity to be holding cash. It's not what was contemplated. What was contemplated was that the fidelity would do its function, provide the service of providing the transfer agent function, and abiding by the prospectuses of the mutual fund, simply provide participants in the plan what was provided for in the prospectuses. And the prospectuses that we quote on pages 19 and 20 of the brief prospectuses explicitly say that the owner of a share is not entitled to interest upon a distribution from the mutual fund. So if you take the plaintiff's position to be true, and it's strictly accurate that the plan is the owner of the mutual fund, the plans who, after all, brought the mutual funds to us, we didn't choose the mutual funds, we were directed to have relationships with the mutual funds chosen by the plans who necessarily performing their fiduciary function read the mutual fund's prospectuses, the plans knew from those prospectuses that they were not going to receive interest because no mutual fund owner receives interest on distributions from the mutual fund. If we were to deem the DOL position and guidance controlling and applicable, do you contend that you complied with it? Yes, although we certainly think that the DOL position is not the position articulated below. And how did you comply with the DOL's guidance? What disclosure would you point to? Because, first of all, the mutual funds themselves, the prospectuses say, the shareholder is not going to get interest. That disclosure is out there. They were given to us, the mutual funds to deal with, so the plans came to us with mutual funds that said the plans won't be getting interest on distributions. So there's that point. There's the second point, that beyond that, the plans knew all along that they weren't receiving interest, were not being treated as owners of plan assets. So there's certainly that much. But doesn't the DOL guidance require more than silence? It requires a disclosure. Well, there hasn't been any regulatory guidance. There's no regulation on this. They have an extensive disclosure regulation that's very detailed, and there is not one word about float in that regulation. So, you know, they're trying to regulate by amicus brief here, which the Supreme Court has warned us is not appropriate. I would compare also this case to Merriman and Sun Life. Remember, Your Honors, in those cases, in neither Merriman nor in Sun Life, did the insurer disclose that it was retaining interest on the RAAs, on the retained asset accounts. There was no disclosure there, and that's the exact kind of disclosure that would be at issue here, the fact that Fidelity, that the interest was being used first to pay bank fees and then return to the mutual funds who were the beneficial owners of the accounts. It's the exact same situation, and to the extent the DOL says Merriman and Sun Life were correctly decided, it means because the disclosures there were sufficient, then the DOL, I think, is conceding that the disclosures here were certainly sufficient. Can I go back and just ask you one point on which I'm not clear? You have referred consistently to the plan as owning the shares prior to the redemption. Is that correct? That's correct. What does that do to your criterion that the owner is the bearer of risk? If the mutual fund shares go down, the plan is not going to be the loser. The beneficiary is going to be the loser. How do you reconcile your risk of loss criterion with the assumption of plan ownership of the shares? Well, I think that reflects the fact that the plan, which I think ultimately helps us, the plan is only, in fact, holding the shares on behalf of the individual participants. This is a directed contribution plan. I.e., it is owner as trustee, in effect. Effectively, yes. So, yes, I mean, clearly those who will benefit from the rising or suffer the loss are the actual participants. But nobody, again, it's already conceded, the participants themselves aren't ever going to get any interest. They get exactly what they contracted to pay for, which, as this Court ultimately concluded in Merriman and Sun Life, is the final point. But that is because of the contract rather than because of the concept of property ownership. Because the plan is holding any cash as trustee just as the plan is holding any mutual fund as trustee. So the concept of ownership can't be the criterion for distinguishing one from the other. It has to be the terms of a contract. Isn't that correct? I'm distinguishing one. I'm not sure I understand the – Well, you said the cash being transferred is not a plan asset. And among other things, it isn't because the plan doesn't own it. One reason it doesn't own it is no risk of loss. Right, yes. Well, if we're going to talk about ownership of the shares themselves as being trustee ownership, and that's why there's no risk of loss, then the same criterion would apply to the cash. And if we're going to distinguish between the treatment of the cash and the treatment of the shares, it's going to have to be on the basis of contract rather than on the basis of a concept of ownership, which could distinguish between the cash and the shares. Matt, answer the question. First of all, I think the contract helps us because the contract prohibits the holding of cash. But second of all, I don't think there needs to be that rigorous comparison between ownership of the shares because it's not a dispute. Everybody agrees as a matter of contract and ownership that the plan owns the shares. That's absolutely unquestioned. The issues of ordinary property rights come in because we're trying to determine what arguably isn't otherwise specified, which is does the plan assume title to the cash, and if so, when? And so those questions then do turn, I think, on fundamental principles, which include risk of loss, and nobody thinks the plans ever assume risk of loss during that period. The prospectus that we quote on page 19 actually says, to the contrary, the mutual funds assume the risk of loss. The trust agreement prohibits the holding of cash. The plans knew all along they weren't being treated as owners, and under ordinary principles of property law what we're fundamentally trying to do is ascertain what the party's understanding was, and at no point did the plans ever understand themselves to be the owners of this cash because they knew they weren't getting interest payments and they knew they weren't getting account statements. And so the core understanding all along has always been that this is not a plan asset at any point. These were the assets of the mutual fund that were being paid just as they would be paid in any mutual fund transaction in the same way that they would be paid in any mutual fund transaction through a check processing period at which it's understood that neither the plan as the actual nominal shareholder has an entitlement to interest nor that the beneficiary at the end of the day gets a check for anything more than the four o'clock value of his or her shares on the day of redemption. Thank you. Thank you, Your Honors. I'd like to address first the issue that my brother raises about the plan not becoming the owner of the cash that's generated from the mutual fund shares, which is an argument I don't really understand. It seems to me that the moment the mutual fund shares are redeemed, the mutual fund takes those shares back. It pays out cash. Cash is generated. Who owns that cash? It seems to me, again, that the plan is the owner of the shares, so the plan is the owner of the cash that's generated from them. My brother says that, well, it's not owned by the plan because it's just being processed. But we know there is cash there because it is earning interest and Fidelity is using that interest for its own benefit or giving it back to the mutual funds. It makes no sense for Fidelity to take it. They're the trustee. It makes no sense for the mutual fund to get it. They've already reacquired the shares and paid out the cash. Why would they earn interest on cash that they've already paid out? So I think that the notion that this is somehow just money that's in process and doesn't belong to anybody or actually apparently belongs to the mutual funds or Fidelity as the trustee is smoke and mirrors. There is cash there. It's cash that's generated from the sale of plan assets, so it belongs to the plan, and it's illegal for Fidelity as trustee to use it for its own purposes or to divert it to a third party. On the issue of risk, I think the case for risk as an indication of ownership has been overstated. The cases cited by Fidelity in its brief are all cases involving ambiguous transactions. They're in bankruptcy court or they're cases before the IRS where there's a question of whether a transaction is a loan or a sale. And risk is just one factor of indicating in those ambiguous situations whether this is a loan or a sale. There's no ambiguity here. We have a sales transaction that's clear. Fidelity as trustee sold the mutual fund shares that were owned by the plan and they acquired the cash again as trustee, and that cash belongs to the plan because the plan was the owner of the shares. There's no ambiguity. You don't need to look to risk. And even if you did look to risk, the name of the account holder on these accounts that were used to make checks to participants doesn't affect the plan's risk. The plan under the plan documents always has an obligation to pay the beneficiaries, to pay the participants what they owe them under the plan. Even if Fidelity were to go under, the plan still has that obligation. So there's not really an issue of risk here. Similarly, the issue of whether the plan can hold cash, the provisions in the agreement simply are designed to ensure that the plan is fully invested. And I don't think they're an indication that the plan can't hold incidental cash. We haven't gotten into the discovery yet. This is a motion to dismiss, so we can't answer Judge Kayotta's question about whether there's actually cash held. But it's the tail wagging the dog to say that because this is cash, therefore the plan doesn't own it. If there's cash, then it means maybe that there was a violation of the agreement in terms of investment, but it doesn't dictate who the owner of the assets are. And this cash was clearly the proceeds of the sale of mutual fund shares owned by the plan, and they were therefore planned assets that should not have been used by the defendants for their own benefit or the benefit of the mutual funds. Thank you.